GREGORY, Circuit Judge,
concurring in the denial of rehearing en banc:
I recognize and am sympathetic to the significant impact that surface mining has had on Appalachian ecology, but the panel in this case was not called upon to assess the wisdom of that practice. In fact, the scope of our review of environmental chai *132 lenges to mountaintop removal mining is exceedingly limited given both the complicated statutory regime put in place to regulate that activity and our own circuit precedent.
With the Surface Mining Control and Reclamation Act of 1977, Congress delegated much of the regulation of surface mining operations to the states. See 30 U.S.C. § 1201 et seq. One of the most significant aspects of federal involvement in surface mining regulation is the issuance of Clean Water Act (“CWA”) Section 404 permits by the U.S. Army Corps of Engineers for the disposal of surface mining waste in area stream waters. Over six years ago, in our decision in Kentuckians for the Commonwealth, Inc. v. Rivenburgh, 317 F.3d 425 (4th Cir.2003), this Circuit found that CWA Section 404 did in fact give the Corps the authority to issue such permits. With that precedent in mind, the appeal over which rehearing is now sought asked us to determine only the narrow and rather fact-specific question of whether the Corps abused its discretion in exercising its CWA Section 404 authority to grant four individual fill permits. As the panel opinion more fully explains, the Corps’ conduct here did not amount to such an abuse.
Judge Wilkinson’s dissent from denial of rehearing en banc suggests that we should hold against the Corps the fact that it is currently working with the EPA to develop a comprehensive functional assessment protocol for use in West Virginia. According to him, this “comes mighty close to an admission that [the Corps] has not been acting properly in its permitting processes.” Infra, at 132. The Corps has always been candid with this Court about both the fact that it did not have such a protocol in place at the time the permits were issued and that the protocol was in the development process. See Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 198 (4th Cir.2009). To use the fact that the Corps is developing this protocol now as evidence that it acted improperly earlier is of questionable value. This kind of protocol may well be the best way to measure stream function for purposes of 40 C.F.R. § 230.11(e), but the question before us in this appeal was not whether the Corps used the best method for measuring stream function. Instead we were asked simply to determine whether the Corps’ approach was arbitrary or capricious. 5 U.S.C. § 706(2). The panel opinion explains at some length why it was not. See Ohio Valley Envtl. Coal., 556 F.3d at 198-201.